[S. F. No. 9867. In Bank.—July 11, 1922.]

CHARLES GERVASONI et al., Respondents, v. CITY OF PETALUMA (a Municipal Corporation), et al., Appellants.

[1] MUNICIPAL CORPORATIONS—CITY OF PETALUMA—BONA FIDE OCCUPANT OF GRANTEE UNDER DEED OF TOWN TRUSTEES—SUFFICIENCY OF EVIDENCE.—In this action to quiet title to certain property in the city of Petaluma, to which the plaintiffs claimed ownership in fee simple, but which title the defendant city denied, and set up an easement and right of way for passage through, over and across the property as a public street, the finding that the grantee of the deed which formed the foundation of the plaintiff's title and which was executed by the board of town trustees on April 14, 1868, under authority of the act of the legislature (Stats. 1867-8, p. 298) enacted to carry out the act of Congress of March 1, 1867, granting to such town authorities the land therein in trust with power to convey so much thereof as was in the *bona fide* occupancy of parties, was a *bona fide* and undisputed occupant of the property at the time of the execution of such deed, is supported by the evidence.

[2] ID.—RESURVEY UNDER ACT OF CONGRESS—MAP SHOWING STREET.—RIGHTS OF PRIOR BONA FIDE OCCUPANT.—A deed made by the trustees of the town of Petaluma to a *bona fide* occupant of land therein after the resurvey of the lands of the town under the act of Congress of 1864 was not void as to the portion of such occupied land as was shown on such map to be a public street,

where the occupant was in the possession of the land at the time of the adoption of such act.

[3] ID.—DESCRIPTION IN DEED — REFERENCE TO MAP DELINEATING STREET.—Where a deed made by the trustees of the town of Petaluma recited that the grantee was in the exclusive and *bona fide* occupancy of the premises, the grantee was not bound by the description referring to the map of the town which delineated a street as traversing the property.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmet Seawell, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. J. Dole for Appellants.

F. A. Meyer and T. J. Geary for Respondents.

RICHARDS, J., *pro tem.*—This action is one to quiet title to certain property in the city of Petaluma, to which the plaintiffs claim ownership in fee simple, but which title the defendant city of Petaluma denies, and further sets up an easement and right of way for passage through, over and across the said property as a public street. The trial court found in the main in the plaintiffs' favor, adjudging them to be the owners of the frontage claimed by them upon Main Street in said city, but reserving to the city certain easements in the rear portion of the property covering what is known as "Water Street." The defendants have appealed from the judgment.

As to the main facts in the case there is no material dispute. The city of Petaluma had its beginning during or possibly prior to the year 1850, when a number of settlers collected on the westerly side of Petaluma Creek, or river, at a point at or near the head of navigation of the said stream. The land at that point was unsurveyed and therefore unoccupied government land, the title to which was vested in the United States. A town grew up at this point, roadways and streets were located according to convenience and by user, and property occupied by the settlers became of more or less value and not a few transfers were made. For more than a decade there was no other title in the occupants of the property thus acquired and transferred than the possessory title of those who had settled thereon

or their successors. Prior to 1860 there appears to have
been a map of the town known as the "Brewster Map," but
it does not appear to have been found or offered in evi-
dence in this case. In the year 1858 the town of Petaluma
was incorporated by a special act of the legislature, which
defined the exterior limits of said town but which did not
embrace any details as to its interior lots, blocks or streets.
(Stats. 1858, p. 140.) In the year 1860 a survey and map
known as the "Eliason Map" was made by order of the
board of trustees of the town, which purported to show its
lots and streets as they then existed on the ground and
which survey and map, after some minor changes had been
·made by order of that official body, was accepted and filed
as an official map of said town. In 1864 [13 Stat. 343]
an act of Congress was adopted providing for a survey of
the town of Petaluma, which act embodied a method for
acquiring title to the lands held by *bona fide* occupants at
the time of the adoption of said act. This act was amended
in certain particulars a year later [13 Stat. 529]. The
survey provided for in said act was made and a map drafted
and adopted and known as the "Stratton Map." This map
was much more detailed as to the size and description of
the lots and width and location of the streets delineated
thereon than was the Eliason map, from which it also dif-
fered in certain other particulars to be hereafter noted.
The Stratton map was approved and certified by the trus-
tees of the said town and was filed for record in the
recorder's office of the county of Sonoma as and for an offi-
cial map of Petaluma, December 30, 1865. On March 1,
1867, an act of Congress was approved providing "That
all· the right and title to the land situated within the cor-
porate limits of the towns of . . . Petaluma in the State
of California, as defined in the acts of the Legislature of
that state incorporating said Towns be and the same is
hereby relinquished and granted to the corporate authorities
of said towns and their successors in trust for and with
authority to convey so much of said land as is in the *bona
fide* occupancy of parties, upon the passage of this act, by
themselves or tenants, to such parties; provided that this
grant shall not extend to any reservation of the United
States nor prejudice any adverse right or claim, if such
exist, to said land or any part thereof, nor preclude a judi-

cial examination and adjustment thereof.'' [14 Stat. 418.] In the following year the state legislature adopted an act authorizing the trustees of the town or city of Petaluma to execute the trust provided for in the foregoing act of Congress by the execution and delivery of deeds to the persons entitled thereto under said congressional act. This act contained a proviso "that in all cases of dispute or contest the parties or persons disputing or contesting should settle and determine their respective rights in the courts of the State; and the said trustees shall in no case of dispute or contest make, execute or deliver a deed to either disputant or contestant until a final determination of the rights of the parties in the courts as herein provided.'' (Stats. 1867–68, p. 298.) In the meantime, and commencing, as we have seen, early in 1850, the influx of settlers upon the town site of Petaluma had been going on. Among these early settlers coming in about the year 1850 were Captain Tom Baylis and David Flogdell and his wife Honora. The two men were intimate friends and probably partners. They built and for a time conducted together upon a portion of the property they had settled upon the Pioneer Hotel, which, according to tradition bore the more intimate appellation of "Tom and Dave's.'' At the early date of their arrival and appropriation of the properties they occupied there were no streets, but the Pioneer Hotel, according to the quite exact identification of several early settlers, stood upon or near the corner of an indefinitely outlined passageway leading down to tide water, where boats were accustomed to land. That this passageway had not, as late as 1860, acquired the definiteness or character of a public street would seem to be fairly inferable from the fact that it is not laid out or delineated as such upon the Eliason map as accepted and approved by the trustees of the town in that year and from which it appears that English Street, of which it would otherwise have been the elongation, terminated at the west line of Main Street and that the property across which said passageway ran appears thereon as lots "8'' and "9'' of block "B,'' and are not shown to be traversed by any road, passageway or street. After a time the firm of Baylis and Flogdell was dissolved and they divided up their properties, Baylis taking the lower or southerly lot, while the lot upon which the Pioneer Hotel

stood was retained by Flogdell, who continued to conduct the hotel, while Captain Baylis retained the shipping business which had grown up at the landing place below. Flogdell died in the early 60's, and his widow, Honora, succeeded to the hotel property. Some controversies, more or less traditional, seem to have arisen between Captain Baylis and the widow of his former associate over the passageway which ran across their properties down to the landing place, but these disputes were finally settled by the marriage of Captain Baylis and the widow, Honora, at a date in the middle 60's not precisely fixed. Captain Baylis seems also to have departed this life upon some date prior to 1868, since it appears that Honora Baylis was his widow at an early date in the latter year. On April 14, 1868, the board of trustees of the town or city of Petaluma, acting under the authority of the act of Congress of 1867, above referred to, and also and by authority of the act of the legislature of 1868 empowering them to execute the trust with which they had been invested by the congressional act of the previous year, executed a deed to Honora Baylis, purporting to grant to her a lot "commencing on the east line of Main Street at the Southeast corner of Lot 353; thence Southerly along the Easterly side of Main Street 80 feet; thence at right angles to Petaluma Creek; thence northerly up said creek to a point at the continuation of the southerly line of said lot 353; thence following the southerly line of lot 353 westerly to Main Street and the place of beginning." The number of the lot given as lot 353 in the foregoing description refers apparently to the lot designated by that number upon the "Stratton Map" and the tract of land covered by the foregoing description would, as to a portion thereof, include the fifty-foot frontage of lot 352½ as shown upon said map, and would also, and in addition thereto, embrace about thirty feet of the land which was designated on said map as a continuation of English Street down to Petaluma Creek. This deed contains the following significant recital:

"Said party of the second part having fully complied with all of the provisions of said ordinances of said Board of Trustees, and her claim to said premises having been fully approved by them, the said Honora Baylis having been a *bona fide* occupant of said premises on the first day

of March, A. D. 1867 by herself and tenants and agents, as will appear by the proofs on file with said Trustees.''

Shortly after this deed had been executed and delivered to her, Honora Baylis entered into a transaction between herself and the administrator of her deceased husband, Captain Thomas F. Baylis, wherein the parties thereto undertook to deal with the passageway across their respective properties. Honora Baylis conveyed to said administrator an easement over a strip of eleven feet along the southerly line of her tract of land as described in her deed just received from the trustees of said town or city, extending from Main Street to Petaluma Creek, which strip of land was to be held by the grantee and his successors ''as a perpetual easement for a passageway.'' Of even date with said deed the administrator conveyed to Honora Baylis an easement on a strip of eleven feet in width along the northerly line of the lands of the estate of Baylis adjacent to the strip conveyed by Honora Baylis to him and which was also to serve ''as a perpetual easement for a passageway.'' By these two transfers a right of way for an alleyway twenty-two feet wide was evidently created for the benefit, at least, of the occupants of these adjoining properties. The Pioneer Hotel building, together with a number of other structures in its vicinity, was destroyed by fire some time in the late 60's, and the property remained, except as to some small shacks which appear to have been placed upon portions of it, for several years untenanted. In the year 1871 Honora Baylis subdivided her said property into three lots, which she sold to different parties, who went into possession of their respective portions, erecting buildings and engaging in business thereon. The person who thus purchased the most southerly of these lots from Honora Baylis transferred the same by mesne conveyances to William Sexton, who became the owner thereof in about 1875 and erected a building thereon. This building, however, instead of being confined to the limits of the lot, as described in his deed, was so erected as to cover the northerly portion of the eleven-foot strip which Honora Baylis had theretofore conveyed to the estate of her deceased husband, Captain Thomas F. Baylis, as her portion of the adjacent passageway, thus leaving the said passageway or alley but eleven feet wide, and said structure has

ever since stood upon that spot and ever since been occupied under a claim of exclusive right by the successors in interest of said Sexton, who are the plaintiffs herein. · During all of these years the evidence shows that the passageway from Main Street down to the landing of Petaluma Creek was used by various persons for the purpose of gaining access to said landing with their teams and produce. As to many of these they were persons bringing their produce to the landing where Captain Baylis and his associate Flogdell carried on their shipping business prior to the division of their interests in about 1864. Such user at first straggled over an indefinite extent across the properties of Baylis and Flogdell and later was confined to the twenty-two-foot strip defined by the deeds passing between Honora Baylis and the administrator of Captain Baylis' estate and later still further confined to the southerly eleven feet of said strip by the fact of the erection of the structure last referred to upon the northerly eleven feet thereof. As to the public user or the right to use the eleven-foot alleyway, to which width it has been thus limited since about the year 1875, no question arises in this case, the issues herein being confined to the portion of the lot the title to which was claimed by the plaintiffs' predecessors to have been acquired by Honora Baylis by virtue of the. deed of the same to her by the trustees of the town of Petaluma in about 1868.

The defendants upon this appeal make the following contentions: 1. That the deed of the trustees of the town of Petaluma to Honora Baylis, which forms the foundation of the respondents' title to the premises in dispute, was and is void. 2. That the defendants' motion for nonsuit should have been granted. 3. That the defendants' demurrer to the plaintiffs' complaint should have been sustained. 4. That the court committed certain errors in law during the trial, to be hereafter noted. 5. That the findings do not support the judgment. 6. That the decision is against law.

[1] As to the appellants' contention that the deed to Honora Baylis was and is void, this rests chiefly for its support upon the claim that Honora Baylis was not a *bona fide* and undisputed occupant of said premises at the time of the execution of said deed so as to be entitled

thereto under the terms of the act of Congress granting
the townsite of the town of Petaluma and of the act of the
legislature authorizing the trustees of said town to make
grants of lots therein to the persons entitled thereto under
said congressional act. The question as to whether Honora
Baylis was such an occupant of the premises in question
as to be entitled to such deed is a question of fact to be
determined by the trial court, and the trial court determined
it adversely to the appellants' contention by its general
finding that the plaintiffs as the successors in interest and
title to Honora Baylis were the owners of the property.
There is ample evidence to justify this finding; and while
there is some evidence of travel over and across this piece
of land by persons going down to the landing with their
produce in the earlier days of the town's history, there was
no evidence that such travel and use of the rather ill-defined
passageway over this property at that time was carried on
by the public under any claim of right or under circum-
stances showing a dedication of the property to the uses of
a public street. On the contrary, there is some very direct
evidence showing that such was not the case, as, for example,
the Eliason map made by order of the town trustees in
1860 and adopted after some changes as the official map of
the town, which map shows English Street as terminating
at the west line of Main Street, which delineates the prop-
erty in question as being lots 8 and 9 in block "B" of said
map, with no street or alley or passageway indicated as
intersecting the same. Again, the trustees of said town
were authorized by the act of Congress and the state legis-
lature to execute conveyances only to those who were in the
*bona fide* and undisturbed possession of the property for
which deeds were applied. The deed to Honora Baylis by
said trustees contained the recital above quoted and from
which it would appear that the said trustees, before making
said deed, investigated the question of the right of Honora
Baylis thereto and of the fact that she was the undisputed
occupant of the premises to which she sought a deed and
that proofs of her right thereto as such occupant were on
file. It is not necessary to go so far as to hold that the
town of Petaluma was bound by this recital; it is enough
to say that it furnishes very cogent evidence as to the truth
of the facts recited. There is also some evidence showing

that the municipality recognized the title of the successors of Honora Baylis to the property it had conveyed to her by the institution of proceedings for making street improvements along Main Street and by the collection of assessments levied against the property now claimed to be a public street for the purpose of making said street improvements. These matters also, while not binding as in the nature of an estoppel, furnish some evidence of acquiescence on the part of the city in the claim of ownership of the premises asserted by the successors of Honora Baylis holding under the aforesaid conveyance of the premises from the trustees of the municipality to her.

[2] The appellant further urges in support of his contention that the deed to Honora Baylis was invalid in so far as it purported to convey the premises now claimed to be a public street, for the reason that said deed to her was made after the resurvey of the lands of the town under the act of Congress of 1864 and the making and adoption of the "Stratton Map" upon which map said lands were plotted as an extension of English Street to tidewater. The appellant further urges that the fact that the description of the property conveyed in the Baylis deed refers by number to one of the lots delineated on the Stratton map binds the party taking said deed to a recognition of the correctness of the Stratton map in so far as it purports to delineate a street as traversing said property. Neither of these contentions is sound. This court had occasion in the early case of *Jones* v. *City of Petaluma*, 36 Cal. 230, to pass upon the effect of the acts of Congress of 1864 and 1867 in relation to the lands of the town or city of Petaluma in the actual occupancy of *bona fide* settlers thereon, and upon the effect of the making of this very survey and map under said acts. A public square had been delineated upon said map and it was the claim of certain of the parties to the above case that at the time of the passage of said acts and the making of said map they were in the *bona fide* occupancy of lands forming a portion of said public square as the same appears upon said map. In disposing of this claim this court held that the rights of such occupants could not be affected by the terms of said acts having reference to the making of a survey or map of the town. In the case of *Alemany* v. *City of Petaluma*, 38

Cal. 553, the same subject was presented with particular reference to the delineation upon said map of a certain street claimed to have been at the time in the *bona fide* occupancy of private persons and this court said with respect to such claim:

"The map which they were authorized to make, was a map representing the existing streets, alleys and squares, and such other as the occupants of the property might consent to. But it was not within the contemplation of the Act that the persons getting up a map of an existing town might wholly disregard the former plan, lay out new streets, alleys and squares, upon property before then devoted to private use, without the consent of the occupants. Such a power in the hands of a few persons proceeding to secure the benefits of the Act of July 1, 1865, to an already existing town, would 'have been liable to the grossest abuses and destructive of the private rights which the Act was mainly designed to foster.''

A like rule has quite generally been adhered to in other jurisdictions in cases where similar conditions were presented. (*Scully* v. *Squier,* 13 Idaho, 417 [30 L. R. A. (N. S.) 183, 90 Pac. 573] ; *Parchen* v. *Ashby,* 5 Mont. 68 [1 Pac. 204] ; *Ashby* v. *Hall,* 119 U. S. 526 [30 L. Ed. 469, 7 Sup. Ct. Rep. 308, see, also, Rose's U. S. Notes].) **[3]** Nor is the fact that the grantee in the Baylis deed took said conveyance with a description, which in certain of its courses referred to a lot by its number as shown upon the Stratton map, to be held as binding said grantee to an admission of the correctness of said map otherwise than as to the location of said lot. The inference arising on the face of said description would rather be otherwise since the officials of said town with said map before them showing the apparent existence of a street across a portion of the property they were purporting to convey to the grantee, nevertheless conveyed the same and in their said conveyance expressly recited that the said grantee was in the exclusive and *bona fide* occupancy of the premises covered by said description and was entitled to a deed thereto notwithstanding the delineations of said map showing that a portion of said premises was a public street.

The foregoing conclusions dispose of the several contentions of the appellant in so far as they relate to the suffi-

ciency of the complaint and of the evidence educed in support of its averments as against a motion for nonsuit.

It remains to deal briefly with certain alleged errors of law claimed to have been committed during the trial of the cause. The first group of these refers to the defendants' objections to the admission in evidence of the deed to Honora Baylis on account of the infirmities above disposed of, and also to the admission in evidence of the other deeds to her successors in the chain of title. As to these later instruments any objection which the defendants might have had to their admission on the ground of defects in their description or in their execution would seem to have been waived by the following colloquy between the trial court and counsel for the defendants after the admission in evidence of the Baylis deed, viz.:

"The Court: Is there any alleged break in the present title of the owner coming down to the City of Petaluma, providing the City of Petaluma could or did convey in the manner plaintiff claims. There is nothing that would require an investigation of those deeds is there?"

"Mr. Dole: I think there is a complete chain of title from the City of Petaluma down."

The remaining objections to the rulings of the trial court are merely stated but not seriously supported by argument, nor by any citation of authority, and do not appear to present any points worthy of discussion in detail or sufficiently important to justify a reversal of the case. We find no sufficient error in this record to warrant such reversal.

The judgment is affirmed.

Waste, J., Shaw, C. J., Sloane, J., Lawlor, J., and Wilbur, J., concurred.