[Civ. No. 5110. First Appellate District, Division One.—June 17, 1925.]

## GRACE M. RANEY, Appellant, v. JOHN T. MERRITT et al., Respondents.

[1] BOUNDARIES — LOCATION OF STREET — SUCCESSIVE CONVEYANCES FROM CITY.—Where the trustees of the city of Petaluma, acting in pursuance of the act of Congress of March 1, 1867, and the act of the state legislature passed in 1868, executed and delivered to the *bona fide* occupant on March 1, 1867, a deed of an entire numbered lot fronting on a certain street which, on the official map, was erroneously shown as having a greater width than it in truth and fact had, the only effect of the subsequent act of the trustees of said city in executing and delivering to a successor in interest of the original grantee of a deed to the portion of said numbered lot erroneously shown on said map as being part of the street was merely to confirm the original deed and thus quiet the title of said successor in interest of the original grantee as against any claim of the city of Petaluma in and to said portion of the lot.

[2] ID.—DISPUTE AS TO TRUE LINE—ACQUIESCENCE IN EXISTENCE OF FENCE—ERRONEOUS LOCATION.—While the mere acquiescence in the existence of a fence and the occupancy of the land up to it does not amount to an agreement that it is on an accepted boundary line, where a dispute exists as to the true line and the parties are uncertain as to its exact location and they agree upon it, mark it upon the ground, or build up to it, and acquiesce in the location for a period equal to the statute of limitations, such line becomes in law the true line called for by the respective descriptions, and this is so regardless of the accuracy of the agreed location as it may subsequently appear.

[3] ID.—UNCERTAINTY AS TO TRUE LINE—AGREEMENT OF PARTIES.— The doctrine of an agreed boundary line and its binding effect upon coterminous owners rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the true line; and when that uncertainty exists, or is believed by them to exist, they may among themselves by agreement fix the boundary line, and that agreement will bind all the consenting parties.

2. Effect of compromise agreement locating division line at place known not to be the true boundary, note, 10 L. R. A. (N. S.) 610. See, also, 4 Cal. Jur. 432; 4 R. C. L. 126.

[4] ID. — BELIEF AS TO UNCERTAINTY — CIRCUMSTANTIAL EVIDENCE.— Whether adjoining property owners believe that an uncertainty as to the location of the boundary line dividing their properties exists at the time they agree upon a location, is a question to be proven by direct evidence or deduced from circumstances in evidence, and a finding that the parties have so acquiesced is fully supported in the absence of direct evidence upon the subject when it may be inferred from conduct and especially from long acquiescence.

[5] ID.—ADVERSE POSSESSION—PAYMENT OF TAXES — EVIDENCE. — In this action to quiet title, in which the trial court found in favor of defendants based upon adverse possession, the findings of the trial court as to the agreed boundary line had the effect of extending and diminishing the limits of the deeds to include and exclude the parcel in dispute, and under such circumstances the payment by both parties of all taxes assessed upon their holdings as conveyed to them by their respective conveyances was a payment of taxes on the land in the possession of the parties.

---

(1) 32 Cyc., p. 854, n. 14 New.   (2) 9 C. J., p. 230, n. 91 New, p. 237, n. 37.   (3) 9 C. J., p. 232, n. 99, p. 233, n. 10.   (4) 9 C. J., p. 286, n. 92, p. 287, n. 93.   (5) 2 C. J., p. 206, n. 39.

APPEAL from a judgment of the Superior Court of Sonoma County. Ross Campbell, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. A. Meyer, Frank J. Burke and Fred S. Howell for Appellant.

Geary & Geary for Respondents.

TYLER, P. J.—Action to enjoin defendants from interfering with the use of certain real property alleged by plaintiff to be owned by her.

The property in dispute is situated in the city of Petaluma and forms a part of what is known and designated as block 517.

The complaint alleges plaintiff to be the owner of two separate parcels of land located within said block.

The first is described as beginning at the southeast corner of said lot 517 at the corner of Oak and Main Streets, and running thence northerly along the line of Main Street,

82½ feet; thence running westerly at right angles to Main Street 130 feet; thence southerly at right angles 82½ feet to Oak Street; thence at right angles along Oak Street in an easterly direction 130 feet to the place of beginning.

The second parcel is described as being a strip of land 10 feet in width and 130 feet in length on Oak Street in front of and adjoining that portion of said lot No. 517, according to Stratton's Official Map of the city of Petaluma extending in an easterly and westerly direction and in a northerly and southerly direction on Main Street a distance of 10 feet.

At the outset it may be well to state that the southeast corner of lot No. 517 is the northwest corner of Main and Oak Streets and that the width of Oak Street as laid out and delineated on Stratton's Official Map of the city of Petaluma is 70 feet when in truth and fact that street is but 60 feet in width. Plaintiff contended at the trial that her first tract begins at and the point of commencement is at the southeast corner of lot No. 517 and not at the northwest corner of Main and Oak Streets (which would be 10 feet farther south) as contended for by defendant, and that she, plaintiff, should have the southerly 82½ feet off of said lot No. 517, and in addition thereto the northerly 10 feet off of Oak Street, making a total of 92½ feet on Main Street.

Defendants contended that plaintiff was only entitled to 82½ feet frontage on Main Street lying immediately north of and along and adjacent to said Oak Street, as said street is upon the ground, for the reason that the point of commencement set out in the deeds in the various chains of title of plaintiff and defendants was intended to and contemplated by reason of their acts and those of their predecessors, to commence at the northwest corner of Oak and Main Streets (as it is on the ground).

The question which was presented for determination by the trial court, therefore, was whether plaintiff was entitled to 82½ feet or 92½ feet fronting on Main Street lying immediately north of Oak Street as it now exists.

The discrepancy in the official map has given rise to the controversy.

In support of their asserted title defendants claimed that a board fence located 82½ feet north of the northern boundary line of Oak Street as it exists upon the ground,

became by acquiescence an established and agreed line between the parties. They also relied upon adverse possession. The findings of the trial court were in conformity with their claim.

Appellant here contends that nowhere does it appear in the evidence that the parties ever made such an agreement, or that any line was ever established. They also claim that the evidence does not support the finding as to adverse possession.

For a clear understanding of the different conveyances involved it may be well to state the history of land titles in the city of Petaluma. They are set forth in *Gervasoni* v. *City of Petaluma,* 189 Cal. 306 [208 Pac. 120].

In the year 1858 the town of Petaluma was incorporated by a special act of the legislature, which defined the exterior limits of said town, but did not embrace any details as to its interior lots, blocks or streets. (Stats. 1858, p. 140.) In 1864 an act of Congress was adopted (13 Stats. at Large, 343) providing for a survey of the town, which act embodied a method for acquiring title to the lands held by *bona fide* occupants at the time of the adoption of said act. The survey provided for in the act was made, and a map drafted and adopted known as the ''Stratton Map.'' This map contained a detailed description of the lots and width and location of the streets, and was approved by the trustees of the town.

On March 1, 1867, an act of Congress was passed providing that all the right and title to the land situated within the corporate limits of certain towns, including Petaluma, as defined in the act of the legislature of the state of California, be granted to the corporate authorities of said towns and their successors in trust for and with authority to convey so much of said lands as was in the *bona fide* occupancy of parties. In the following year the state legislature adopted an act authorizing the trustees of the town or city of Petaluma to execute the trust provided for in the act of Congress mentioned by the execution and delivery of deeds to the persons entitled thereto under the congressional act.

The Stratton Map, above referred to, indicates that the portion of Oak Street here involved is a street 70 feet in width, when, as before stated, in truth and in fact, it was and is a street of but 60 feet in width.

In conformity with the acts above mentioned the board of trustees of the city of Petaluma conveyed to one Brady, lot No. 517 of said city, describing it by number and reciting that it fronted 253.4 feet on Main Street and contained 13,880 square feet.

Through mesne conveyances one John D. Scott acquired this lot and on January 17, 1885, he conveyed a portion thereof to B. F. Cox, D. F. Connolly, William Ayers, and Thomas Kyle.

The portion so conveyed was described as being a part of lot No. 517, according to Stratton's Official Map. The description by metes and bounds recites its beginning to be "at the Southeast corner of said lot numbered 517 at the corner of Oak and Main Street, running thence northerly along the line of Main Street 82½ feet; thence westerly at right angles to Main Street 130 feet; thence running southerly at right angles 82½ feet to Oak Street; thence at right angles along Oak Street in an easterly direction 130 feet to the place of beginning."

Thereafter on August 22, 1887, Scott (the common grantor and predecessor in interest of both plaintiff and defendants) conveyed to John Merritt (father of defendants and their immediate predecessor in title) all of lot No. 517, saving and excepting from the conveyance the 82½ feet fronting on Main Street by 130 feet fronting on Oak Street, heretofore conveyed to Cox et al.

On May 2, 1906, the trustees of the City of Petaluma, acting under the authority vested in them under the acts hereinabove mentioned, conveyed to one Albert R. Charles, one of the predecessors in interest of plaintiff, title to the northerly ten feet fronting on Main Street by 130 feet in depth, off of the northerly side of Oak Street, as being a *bona fide* occupier through his grantors on the first day of March, 1867. Plaintiff's asserted chain of title therefore to the two claimed parcels of land is the deed from Scott to Cox et al., through which the deraigned title to the first parcel and the deed from the trustees of the city of Petaluma to Albert Charles granting the ten-foot strip.

Defendants on the other hand deraign their title by decree of distribution through the deed of Scott to John Merritt by which all of lot 517 was conveyed to him saving the 82½ feet conveyed by Scott et al., John Merritt having

died and his estate being succeeded to by defendants under such decree.

[1] It is clearly manifest to us that plaintiff never acquired through her predecessors in interest any additional frontage on Main Street by reason of the deed in 1906 executed by the city trustees to Charles. The trustees had already executed a deed to the entire tract to Brady, who was entitled thereto as being in possession of all of lot 517, and no other person than Brady could have procured this deed, as he was the *bona fide* occupant of the entire lot on March 1, 1867. The action of the trustees, therefore, if it had any effect, was to merely confirm the original deed and thus, in effect, quiet the title of the successors in interest of Brady as against any claim of the city of Petaluma in and to the northerly 10 feet of Oak Street as erroneously depicted on the Stratton Map with respect to the width of that street.

In support of the findings respondents claim that by the error in the Stratton Map with respect to the width of Oak Street, Scott, while the owner of the balance of the lot, and Cox et al., grantees of Scott, agreed that the northerly line of the lands conveyed by Scott to Cox et al., should commence at a point on the west side of Main Street, 82½ feet north of the northerly property line of Oak Street, and thereafter Scott and Cox et al., and their respective successors in interest, acquiesced in said line and built to it and no further.

There is evidence to show that prior to the execution of the deed from Scott et al., on January 17, 1885, these grantees were engaged in the express business in the city of Petaluma, and were at the date of the deed just mentioned leasing from Scott the identical property which they subsequently acquired. Upon this property while so leased was situated along the north property line of Oak Street for a considerable distance of the 130 feet, marking the north line of the land, a fence which had been constructed by Scott. Shortly after their purchase Cox et al. built barns and sheds to the line of the old fence and to the line of the property they had leased, which was a line running west 130 feet from a point on the west side of Main Street 82½ feet north of the north property line of Oak Street. Kyle, one of the grantees, testified that when the sheds and barns were

built to that line that Scott, himself, and his associates, believed it to be the northerly line as conveyed to them, and that they designated it as such.

It also appeared that all parties interested therein acquiesced in and maintained the line so established by Scott and Cox et al., and that during all of the times since 1885 and down to the year 1919, when appellant acquired the property, John Merritt, through whom defendants claim, and his successors in interest enjoyed all of lot 517 without interruption of claim of right therein to a point 82½ feet north of the north property line of Oak Street. Other evidence is to the same effect and we deem it sufficient to support the findings of the trial court.

[2] While the mere acquiescence in the existence of a fence and the occupancy of the land up to it does not amount to an agreement that it is on an accepted boundary line (*Huddart* v. *McGirk,* 186 Cal. 386 [199 Pac. 494]; *Staniford* v. *Trombly,* 181 Cal. 372 [186 Pac. 599]), still, where, as here, a dispute exists as to the true line and the parties are uncertain as to its exact location and they agree upon it, mark it upon the ground, or build up to it, and acquiesce in the location for a period equal to the statute of limitations, such line becomes in law the true line called for by the respective descriptions, and this is so regardless of the accuracy of the agreed location as it may subsequently appear. (*Silva* v. *Azevedo,* 178 Cal. 495 [173 Pac. 929]; *Board of Trustees* v. *Miller,* 54 Cal. App. 102 [201 Pac. 952].)

[3] The doctrine of an agreed boundary line and its binding effect upon coterminous owners rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the true line. When that uncertainty exists, or is believed by them to exist, they may among themselves by agreement, fix the boundary line, and that agreement will bind all the consenting parties. (*Clapp* v. *Churchill,* 164 Cal. 741 [130 Pac. 1061].)

[4] Whether adjoining property owners believe that an uncertainty as to the location of the boundary line dividing their properties exists at the time they agree upon a location, is a question to be proven by direct evidence or deduced from circumstances in evidence (*Hill* v. *Schumacher,* 45 Cal. App. 362 [187 Pac. 437]), and a finding that the parties have so acquiesced is fully supported in the absence of

direct evidence upon the subject when it may be inferred
from conduct and especially as here from long acquiescence.
(*Board of Trustees* v. *Miller,* 54 Cal. App. 102 [201 Pac.
952].)

Upon the question, therefore, we conclude that there was
an uncertainty occasioned by the error in the Stratton Map,
and that Scott and Cox et al., predecessors of the parties in
interest, had fixed the true line as commencing on the west
side of Main Street at a point 82½ feet north of the north
property line of Oak Street and that their successors in
interest had at all times acquiesced in the line so fixed until
the claim made by plaintiff.

[5]  Equally without merit is the contention that adverse
possession to the 10-foot strip was not proven for the reason
that taxes had not been paid thereon by defendants for the
necessary period.

In this connection the evidence shows that both parties
have paid all taxes assessed upon their holdings as conveyed
to them by their respective conveyances.  The findings of
the trial court as to the agreed boundary line had the effect
of extending and diminishing the limits of the deeds to in-
clude and exclude the parcel of land in dispute.  Under
such circumstances the payment of taxes assessed in this
manner is a payment on the land in the possession of the
parties.  (*Price* v. *De Reyes,* 161 Cal. 489 [119 Pac. 893].)

In conclusion it may be stated that to us it seems beyond
all question that the predecessors of the parties in interest
plainly intended and contemplated that the property to
which plaintiff has succeeded should commence at the north-
west corner of Oak and Main Streets as it appeared upon
the ground, and that plaintiff never acquired any additional
or greater frontage than the deed of his predecessors in in-
terest called for.

Judgment affirmed.

Cashin, J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the
supreme court, after judgment in the district court of
appeal was denied by the supreme court on August 13,
1925.

All the Justices present concurred.