[Civ. No. 2308.   Third Appellate District.—August 26, 1921.]

## THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY, etc., Appellant, v. W. H. MILLER et al., Respondents.

[1] BOUNDARIES—AGREED LINE—EVIDENCE—INFERENCES.—An agreement fixing a boundary line need not be shown by direct evidence but may be inferred from conduct, and especially from long acquiescence.

[2] ID.—ERECTION OF FENCE—LAPSE OF TIME—PRESUMPTION.—A presumption that an agreement formerly was made as to the location of a boundary line may arise from the fact that one or both of the adjoining owners have definitely defined such line by erecting a fence or other monument on it and that both have treated the same as fixing the boundary between them for such length of time that neither ought to be allowed to deny the correctness of its location.

[3] ID.—QUESTIONED BOUNDARY LINE—ACQUIESCENCE—INFERENCE.— The doctrine of an agreed boundary line and its binding effect upon the coterminous owners rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line; but this does not mean that the inference of an agreement arising from acquiescence does not support the added inference that the inferred agreement was

---

1.   Location of boundary by acquiescence or agreement, notes, 69 Am. Dec. 711; 27 Am. Rep. 239.

based on a questioned boundary line. The primary inference is of a valid pre-existing agreement, and to be valid that agreement must have been based on a doubtful boundary line.

[4] ID.—ACTION TO QUIET TITLE—EVIDENCE—LEASE AS DECLARATION AGAINST INTEREST.—In an action to quiet title to a portion of a quarter-section of land, the record title to which is in plaintiff, but which the defendants claim under the doctrine of an agreed boundary line, a lease made by plaintiff covering that quarter-section wherein it recited that the lands leased contained "one hundred acres, more or less," being inconsistent with plaintiff's present claim of title, is admissible as a declaration against interest.

[5] ID.—AGREED BOUNDARY LINE—TITLE OF SUCCESSORS IN INTEREST. Where a boundary line is established by agreement, that agreement inures to the benefit of the successors in interest of the parties, even though such parties do not purchase with the understanding that the fence erected along the agreed boundary marked the true boundary.

APPEAL from a judgment of the Superior Court of Butte County. H. D. Gregory, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wilson & Wilson and McCoy & Gans for Appellant.

Guy R. Kennedy and George F. Jones for Respondents.

FINCH, P. J.—The defendants were given judgment quieting their title to 39.85 acres of land in Butte County and the plaintiff appeals.

The plaintiff holds the record title to the southeast quarter of section 23 and the defendants have the record title to 150 acres of land in the southwest quarter of section 24 in the same township including all of the west half thereof. The land in dispute is approximately the east half of the east half of said southeast quarter. The trial court found in favor of the defendants on the issues of adverse possession and agreed boundary. Since the defendants have paid taxes in accordance with their record title only, it is conceded that the finding in favor of adverse possession cannot stand unless that of an agreed boundary is upheld. The question, therefore, is whether there is evidence to support the finding that the predecessors in title of the parties established such boundary line by mutual agree-

ment. There is no direct evidence of such an agreement and the question must, therefore, be determined from the conduct of the respective owners of the lands, viewed in the light of the surrounding circumstances.

It appears that the plaintiff's lands, as well as those of the defendants, originally were a part of the Bosquejo Rancho. When this rancho was subdivided does not appear. As early as 1876 Wm. Howard and P. B. Fox had acquired the south half of section 24 and in the year 1881 Leland Stanford acquired some 4000 acres of the rancho, including the southeast quarter of section 23, that quarter being in the extreme southerly end of the tract.

The court found that about the year 1878 the predecessors in interest of the parties, being uncertain as to the boundary line between their respective lands, mutually agreed upon the location thereof, constructed a substantial fence upon such agreed line, and that the respective owners of said parcels of land have ever since jointly maintained and repaired such fence and recognized it as marking the true boundary line between their lands. The evidence shows without conflict that the fence stood in its present location as early as 1886 and that it then had the appearance of being ten or twelve years old; that as far back as any witness knew, the plaintiff and its predecessors have occupied the lands to the west of the fence and the defendants and their grantors those to the east; that many years ago the latter cleared the lands on the east side up to the fence and have thereafter cultivated the same, at one time having about half of the disputed strip in alfalfa; and that they have never been disturbed in their possession and use of such lands nor have their rights thereto been questioned prior to the commencement of this action. At all times the respective parcels of land have been assessed and the owners thereof have paid taxes thereon according to their record titles. In the year 1904 the plaintiff made a written lease to Geo. W. and Chas. Dicus, grantors of defendants, of the southeast quarter of section 23 and therein recited that the lands leased contained 100 acres, more or less. This lease was renewed from year to year up to 1913. The actual area west of the line claimed by the defendants is about 112 acres. A growth of timber covers the lands to the west of the fence and such lands

have at all times been used for pasture. By actual survey it was ascertained that the fence is ten chains west of the section line as established by the original survey of the rancho.

Is acquiescence for forty years, under the circumstances stated, sufficient evidence to sustain the finding of the court? The evidence is not so conclusive in its nature as to compel the trial court to find in favor of an agreed boundary. The fact that the line alleged to have been established by agreement is 660 feet west of the surveyed section line is a strong circumstance against the defendants' claim. In the absence of that circumstance the evidence would seem to be conclusive in favor of the defendants. Whether that circumstance is sufficient to overcome the justifiable inference from long acquiescence under other circumstances shown involves the weighing of conflicting evidence, a function exclusively of the trial court, and is not a question of law within the province of the court of appeal. [1] "An agreement fixing a boundary line need not be shown by direct evidence, but may be inferred from conduct, and especially from long acquiescence." (9 C. J. 232; 5 Cyc. 933.) The "agreement must be express or implied from the acts of the parties and acquiesced in for the period fixed by the statute of limitations." (*Wheatley* v. *San Pedro etc. R. R. Co.,* 169 Cal. 514, [147 Pac. 138].) [2] "A presumption that an agreement formerly was made as to the location of a boundary line may arise from the fact that one or both of the adjoining owners have definitely defined such line by erecting a fence or other monument on it and that both have treated the same as fixing the boundary between them for such length of time that neither ought to be allowed to deny the correctness of its location." (4 R. C. L. 129.)

[3] Appellant urges that there is no proof that there ever was any uncertainty as to the location of the true boundary line. There is no direct evidence to that effect but, as stated, the facts found to exist justify the inference that the adjoining owners had agreed upon the location of the boundary. This inference is of a valid agreement and necessarily implies that there was an uncertainty as to the true line. "The doctrine of an agreed boundary

line and its binding effects upon the coterminous owners rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line. . . . This does not mean that the inference of an agreement arising from acquiescence does not support the added inference that the inferred agreement was based on a questioned boundary. The primary inference is of a valid pre-existing agreement and to be valid that agreement must have been based on a doubtful boundary line.'' (*Clapp* v. *Churchill,* 164 Cal. 745, [130 Pac. 1062].)

[4] It is contended that the court erred in the admission in evidence of the lease referred to. While not entitled to great weight, the recital of the lease as to the acreage embraced within the southeast quarter of section 23 is inconsistent with appellant's present claim of title and the instrument was admissible as a declaration against interest.

[5] It is argued that there is no evidence to support the finding that the defendants purchased with the understanding that the fence marked the true boundary. The finding, however, is not necessary to the conclusion reached. The defendants acquired title in the year 1914. If the boundary line was established by agreement as found by the court, that agreement inured to the benefit of the defendants. (*Young* v. *Blakeman,* 153 Cal. 477, [95 Pac. 888].)

The judgment appealed from is affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 24, 1921.

All the Justices concurred, except Shaw, J., and Sloane, J., who were absent.