[Sac. No. 4618. In Bank.—March 30, 1934.]

M. MONIZ et al., Respondents, v. ALVA PETERMAN, Appellant.

W. T. Belieu for Appellant.

H. W. McGowan for Respondents.

CURTIS, J.—Action to quiet title to a 40-acre tract of land in Glenn County, upon which a pumping plant and well are situated. In 1908, the plaintiff Moniz and one Pimental, predecessor in interest of defendant Peterman, and one Fulton, as partners in a dairy business in Glenn County, purchased a tract of land consisting of 130 acres from David Hughes, situated in the north half of section 3, township 19 north, range 3 west, M. D. B. & M. It was

agreed between the parties that Fulton should take the east 50 acres, Moniz the plaintiff, should take 40 acres adjoining Fulton's on the west, and Pimental the 40 acres adjoining Moniz' tract on the west. A survey was made for Hughes by one T. L. Knock, a licensed surveyor, which survey was known as the "Map of the Hughes Tract", and a fence which connected the stakes put in by Knock to mark the northwest and southwest corners of Moniz' land and the northeast and southeast corners of Pimental's land, was jointly constructed between Moniz' land and Pimental's land by them. Moniz and Pimental shared the expense of constructing said fence. In the northwest corner of Moniz' land, the three partners dug a well and installed a pump and engine to be used in common by them. Subsequently Pimental and Fulton sold their land, and it is the claim of plaintiffs that at the time of the sale of their property, plaintiff Moniz paid them for their part or interest in the well. No question ever arose until the present controversy as to the ownership of this well and the land upon which it was located from the time the well was dug and the pump installed in 1908, but the respective owners on each side of the fence during all the intervening years used the property up to the fence line. In August, 1921, Alvarez acquired his interest in the Moniz tract. In 1927, by mesne conveyances, the defendant Peterman became the owner of the 40-acre tract formerly owned by Pimental. In 1930, defendant Peterman had a survey made of his property by one Thomas. According to this survey the boundary line between his land and the land of the adjoining owners, Moniz and Alvarez, lay some 18 feet to the east of the fence between the two tracts of land, and the pumping plant and well, instead of being on the northwest corner of plaintiffs' property, was situated on the northeast corner of defendant's. Defendant thereupon erected a fence upon the line located by the recent survey to the east of the well and pumping plant, thereby inclosing it and preventing the plaintiff Alvarez from using any water from the well. This action was then commenced by the plaintiffs to quiet title to their 40-acre tract which, according to their contention, is bounded on the west by the line marked by the fence erected by Moniz and Pimental at the time of the purchase of the 130-acre tract of land in 1908. The original deeds from

Hughes to Moniz and Pimental set forth the description of their respective tracts by metes and bounds and described the 40-acre tract deeded to Moniz as beginning at a point in the section line between section 3, township 19 north, and section 34, township 20 north, range 3 west, M. D. B. & M. *2820 feet east of the common corner* for sections 3 and 4, township 19 north, and sections 33 and 34, township 20 north, range 3 west, M. D. B. & M. and described the 40-acre tract deeded to Pimental as beginning at a point in the section line between section 3, township 19 north, and section 34, township 20 north, range 3 west, M. D. B. & M. *2150 feet east of the common corner* for sections 3 and 4, township 19 north, and sections 33 and 34, township 20 north, range 3 west, M. D. B. & M. The dispute between the adjoining owners arises from the lack of knowledge as to the true location of the initial starting point for the two descriptions, the plaintiffs claiming that the common section corner from which the description in the deeds starts is from 41 to 44 feet west of the center line of the Southern Pacific right of way, and the defendant claiming it to be 26.2 feet west of said right of way. If defendant be correct, the eastern boundary of his tract of land would be some 18 feet east of the boundary marked by the fence built by Moniz and Pimental in 1908. The trial court upheld plaintiff's contention that the location of the initial starting point was 44 feet west of the center line of the Southern Pacific right of way, thereby including the disputed strip of some 18 feet within the boundary and description of plaintiffs' deed, and made a further finding to the effect that the line as marked by the fence built in 1908 was the agreed and established boundary line. Judgment for the plaintiffs quieting their title to the 40-acre tract, and for the sum of $272.50 as damages for the deprivation of the use of the well was made and entered. From said judgment, defendant appeals.

There is no merit in the appeal. The finding of the trial court with reference to the initial starting point is supported by the evidence. The question of the location of the common corner section which was the initial starting point for the description of plaintiffs' and defendant's deeds was gone into thoroughly by both sides. Mr. Russell, a surveyor called by the plaintiffs, testified that by measuring

2,820 feet west from the northwest corner of plaintiffs' property he arrived at a point 45 feet from the center of the Southern Pacific right of way, that he was unable to find any monument there, but by prolonging a straight line north through the southwest corner of said section 3 and through another known section corner one mile to the south of the latter section corner, he arrived at the exact intersection marked by his measurements from the northwest corner of plaintiffs' property, thus indicating that the point 45 feet west of the railroad right of way was the true section corner. Bayard Knock, who had been county surveyor of Glenn County for some fifteen years and had made numerous surveys all through that particular township, and who was a son of T. L. Knock who had made the original survey of the property here for David Hughes, testified from his general knowledge of the section corners north and south of said corner, that said corner was 44 or 45 feet west of the center line of the Southern Pacific right of way. He further testified with reference to known section corners both directly north and south of the corner in dispute, giving the exact location in each instance, and stated that all of them were from 41 feet to 46 feet west of the center line of the railroad right of way. He testified that he believed the section corner was approximately 45 feet west of the center line of the railroad right of way because ''it bears out a general alignment with all the others there, and I cannot see why with the whole alignment running 40 odd feet that that should only be twenty-six''. Ryan, a licensed surveyor, testified from the field-notes of T. L. Knock, deceased, of his survey of the Hughes tract, being the original and identical survey made by him for Hughes at the time of the sale of the 130-acre tract to Moniz, Pimental, and Fulton in 1908, that T. L. Knock had established the section corner here in dispute about 41 feet west of the center line of the railroad right of way. Bayard Knock likewise so interpreted these field-notes of his father. The map of the Hughes subdivision was also received in evidence. It cannot be said, as claimed by appellant, that a finding based upon the above testimony, locating the disputed point at 44 feet west of the center line of the railroad right of way, was ''contrary to all the evidence and wholly unsupported''.

Appellant at the trial attempted to prove his contention by showing that there was an iron pipe in the ground located at the point claimed by him to be the common section corner, that is to say, 26.2 feet west of the center line of the railroad right of way. It is admitted that there was an iron pipe there, but there is no direct evidence establishing when the pipe was so located, or that it was a government location of the section corner. Appellant cites section 2077, subdivision 2, of the Code of Civil Procedure, which provides that, "when permanent and visible or ascertainable boundaries or monuments are inconsistent with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount", as requiring that such monument be held to be the common section corner. It will be noted, however, that the original government field-notes were not available and appellant in his own brief states that, "it stands as an admitted fact in the case that there was no established or known government corner common to the four sections". The testimony of Thomas, the licensed surveyor, who made the survey upon which appellant bases his claim to the 18 feet of land and the well situated thereon, that in several maps or adjoining tracts of lands, the iron pipe had been accepted as the section corner by the surveyors making the respective surveys, while persuasive, is not conclusive. As was said in *Golden* v. *City of Vallejo*, 41 Cal. App. 113 [182 Pac. 347], in answer to a similar argument that by virtue of code section 2077, subdivision 2 of the Code of Civil Procedure, the known monument must control, "the application of the rule presupposes that the monument was placed by the government surveyors to mark the corner. But that was not established and the court in view of the evidence was justified in rejecting that theory." Inasmuch as neither side could with certainty establish the disputed section corner, the decision of the trial court necessarily rested upon a weighing of probabilities. We have set forth generally the evidence offered by each side. It will serve no purpose for us to balance the facts adduced one against the other and weigh the testimony of the various witnesses upon this phase of the case. That was the province of the trial court. It has done so and decided in favor of the respondents. Under the familiar rule relative to a

conflict in evidence, the conclusion of the trial court will not be disturbed on appeal.

But in no event, even if it be conceded for the sake of argument that the evidence relative to the location of the initial starting point of the Hughes survey preponderated in favor of the appellant, would appellant be entitled to a reversal of the judgment. The finding of the trial court that the fence jointly constructed by Moniz and Pimental in 1908, constituted an agreed and established boundary is amply supported by the evidence. Both Moniz and Pimental testified that a survey had been made by T. L. Knock in order to properly subdivide the 130-acre tract, and that they jointly constructed the fence, starting at the stakes located by the survey, with the understanding that such fence was and would be the boundary line of their respective tracts. And there is not the slightest doubt that from the time of the construction of the fence in 1908, until appellant moved the fence over in 1930, the respective owners on each side of the fence acquiesced in the fence as the true boundary line of their properties. This is expressly admitted by appellant in his brief. Appellant, however, insists that "mere acquiescence" is not sufficient to sustain the finding, and that in the absence of proof of a dispute or uncertainty with reference to the boundary line and an agreement between the parties, the finding must fall. But it is settled that no dispute in the sense of a quarrel or ill-feeling between the parties is necessary. (*Price* v. *De Reyes*, 161 Cal. 484, 489 [119 Pac. 893].) And there is no doubt that the boundary was uncertain for this is demonstrated by the fact that it was necessary to employ a surveyor to divide the entire tract and fix and definitely establish the boundary line. Neither is an express agreement in writing or parol necessary. A tacit agreement to regard the fence as the true boundary line is sufficient and this may be inferred or implied from the conduct of the parties. (*Raney* v. *Merritt*, 73 Cal. App. 244 [238 Pac. 767] ; *Vowinckel* v. *N. Clark & Sons*, 217 Cal. 258, 260 [18 Pac. (2d) 58].)

It is, of course, true that the acquiescence must consist in acquiescence in the fence as a boundary line and not mere acquiescence in the existence of the fence as a barrier. Thus in *Staniford* v. *Trombly*, 181 Cal. 373 [186 Pac. 599], the court reversed the judgment, holding that the evidence

therein showed that the builders of the fence fixed the line
"for occupancy and not for title". It was also so held in
*Grant Pass Land & Water Co.* v. *Brown,* 168 Cal. 456 [143
Pac. 754], where it was shown, as in *Staniford* v. *Trombly,
supra,* that the fence had been built to turn cattle and not
to establish a boundary line. And it is, of course, well
settled by a long line of authorities that if the true location
of the boundary line is known by both the parties, or one
of them, but nevertheless another and different line is agreed
upon or acquiesced in as the boundary line, acquiescence in
such line even for a long period of time will not suffice to
establish such line as the true boundary line. (*Clapp* v.
*Churchill,* 164 Cal. 741 [130 Pac. 1061]; *Lewis* v. *Ogram,*
149 Cal. 505 [87 Pac. 60, 117 Am. St. Rep. 151, 10 L. R. A.
(N. S.) 610]; *Mann* v. *Mann,* 152 Cal. 23 [91 Pac. 994];
*Nathan* v. *Dierssen,* 134 Cal. 282 [66 Pac. 485]; *Cosgrave*
v. *Donovan,* 52 Cal. App. 625 [199 Pac. 808, 810].) But
neither would an express agreement. This is so because if
the true location of the line be certain, an agreement plac-
ing it somewhere else could not be enforced, for the agree-
ment, if oral, would be void as constituting an attempt to
transfer land without writing (sec. 1091, Civ. Code) and
the agreement, if written, would be ineffectual to pass title
as it would lack the apt words of conveyance necessary to
accomplish a transfer of real property. (*Lewis* v. *Ogram,
supra.*) Most of the cases cited and relied upon by appel-
lant belong to this category, and obviously the language in
such cases setting forth the rules and requirements appli-
cable to the situation where the boundary is in fact known
but the parties agree upon another and different line as the
boundary, have no application to the situation pictured here,
where the boundary line (as is contended by appellant) was
not the true boundary line, but was in good faith through
a mistaken belief in the correctness of the original survey
accepted as such by both parties. No good reason exists
why the same rules should not apply where the coterminous
owners honestly believe that a certain line marks the true
boundary line and build a fence thereon with the under-
standing that it shall mark and measure their properties, as
are applied where the owners do not know where the bound-
ary line is and being uncertain, by agreement establish a line
as the boundary. It has been so held. (*Dundas* v. *Lanker-*

*shim School Dist.*, 155 Cal. 692 [102 Pac. 925]; *Silva* v. *Azevedo*, 178 Cal. 495 [173 Pac. 929]; *Nusbickel* v. *Stevens Ranch Co.*, 187 Cal. 15 [200 Pac. 651]; *Vowinckel* v. *N. Clark & Sons*, 217 Cal. 258 [18 Pac. (2d) 58].)

In the case of *Silva* v. *Azevedo, supra,* Azevedo deeded to Silva part of a tract of land purchased by him, the land granted being described in the deed by metes and bounds. Before the execution of the deed the entire tract had not been divided, nor had the boundary line between the east and west halves been marked upon the ground. Azevedo and Silva, acting jointly, employed a surveyor to survey the tract, to divide the same into halves, and to furnish a particular description by metes and bounds. The surveyor made the survey and established a line of stakes upon the ground but by mistake located these stakes too far to the east. The two joined in building a substantial fence on the line marked by the stakes, believing such line to be the true line called for by the deed. The court said: "On this state of facts, we think there was no room for any other inference than that the line indicated by the surveyor as the dividing line between the two holdings, and followed by the erection of a fence by the two parties, was agreed on by them as the true boundary . . . That Silva and Azevedo were, in fact, in doubt as to the place where the dividing line should run is apparent from the circumstances, and from their conduct. . . . That the parties thought they needed the assistance of someone possessing the requisite ability is conclusively shown by their employment of a surveyor to locate and mark the division line between the two halves of the larger tract. The only purpose they could have had in so doing was to fix definitely, by proper measurement and marking, the boundary, which, until it was so ascertained and marked, must have remained uncertain in their minds. When, then, acting upon the information so given them, they joined in the construction of a substantial fence on the line, and proceeded, respectively, to improve and cultivate up to the fence, the only theory upon which their acts can be reasonably explained is that they had agreed upon the fence line as the true location of the west boundary of the land conveyed to Silva. It is true that both were mistaken in believing that the line so fixed was the true line. But this does not prevent the application of the

rule." It is true that doubt is thrown upon this conclusion by the case of *Huddart* v. *McGirk,* 186 Cal. 386 [199 Pac. 494], but since the decision of that case, both the case of *Nusbickel* v. *Stevens Ranch Co., supra,* and *Vowinckel* v. *N. Clark & Sons, supra,* have been decided by this court. In the Nusbickel case, the case of *Silva* v. *Azevedo, supra,* is cited as an authority, and in the Vowinckel case, it is quoted from with approval. The facts in the Nusbickel case and the Vowinckel case are similar to the facts in the instant case, and are decisive of the question here involved.

■ Appellant complains that the finding relative to the agreed boundary line is not within the issues of the amended complaint to quiet title. The first count contained the usual averments of ownership and possession of the property in controversy. We are of the opinion that under these general allegations, the issue of an agreed boundary line may be proved. "One averring himself to be the owner in fee, may prove title by adverse possession, or indeed any title, however acquired." (22 Cal. Jur., p. 165.)

We are satisfied that not only are the findings of the lower court supported by the evidence, but that the equities in the case are with respondents.

The judgment is affirmed.

Shenk, J., Waste, C. J., Langdon, J., Preston, J., and Seawell, J., concurred.