[Civ. No. 2176. Fourth Appellate District.—January 24, 1939.]

LOLA DESIRRA SWARTZBAUGH et al., Appellants, v. E. L. SARGENT, Respondent.

Rutan, Mize and Kroese, Robert C. Mize and Harold H. Coyle for Appellants.

Forgy, Reinhaus & Forgy and R. M. Crookshank for Respondent.

MARKS, J.—Plaintiffs brought this action to quiet title to the south one-half of the southwest quarter of the northeast quarter, and the southeast quarter of the northeast quarter of section twenty-six, township four south, range 10 west, S. B. B. & M. in Orange County. They allege that the north line of the first described land is six hundred sixty feet north of the south line of the quarter section, and the west line of the second described tract is thirteen hundred eighteen and one-half feet east of the west line of the quarter section as originally located.

Defendant filed an answer and cross-complaint in which he asserted title to the north one-half of the southwest quarter of the northeast quarter of section twenty-six. He alleged that the south boundary line of his property is six hundred fifty and ninety-nine one hundredths feet north of the south line of the quarter section and twelve hundred ninety-six and thirty-six hundredths feet west of the east line of the section.

This is really a boundary line dispute. The lands claimed by the parties overlap about nine feet along the south line and an average of about fifteen feet along the east line of defendant's property.

Plaintiffs rely principally upon a decree of the Superior Court of Orange County in a case brought under the Land Title Law of California (Stats. 1915, p. 1932) commonly known as the Torrens Title Act. That decree established

title in John Josiah Swartzbaugh (predecessor in interest of Ruth Baldus) and Lola Desirra Swartzbaugh to the land as described in their complaint, with certain exceptions not important here.

Defendant alleged that he and Mr. and Mrs. Swartzbaugh had agreed on boundary lines more than twenty years prior to the commencement of this action and that such lines had been recognized and observed as the true boundary lines for that period of time. He also alleged that although he was named in the Torrens Title action no notice of its pendency or any process was ever served upon him and that he had no knowledge of the action or judgment rendered in it until about seventeen years after the decree was entered.

The trial court found that the Torrens Title decree was void as to defendant because of lack of notice and service of process; that the then owners had agreed on the boundary lines substantially in the locations alleged by defendant; that they had recognized and observed those agreed boundary lines as the true boundary lines for more than twenty years and until 1933 when the present dispute arose. A decree was rendered quieting defendant's title to the property claimed and actually occupied by him, being substantially the same property described in his pleadings, and quieting title to plaintiffs' property with the agreed boundary lines established as the true boundaries.

Two questions are presented for our consideration: The effect of the Torrens Title decree in view of the defect of no notice or process having been served on defendant, and the sufficiency of the evidence, under the law of this state, to support the finding of the agreed boundary lines.

While the evidence on the question of service is conflicting, there is ample evidence in the record to support the finding that defendant was not served with notice or process in the Torrens Title action. It is not claimed that he assented to the proceeding or to the registration of any of the property there described.

Section twelve of the Torrens Title Act provides that all nonconsenting adjacent owners must be served with a notice of the proceeding if they reside in the state and can, with reasonable diligence, be found. That defendant was an adjoining owner is not questioned. Swartzbaugh knew the exact property defendant then occupied and was farming. At the time of the proceeding defendant was residing on his

property and this was known to Mr. and Mrs. Swartzbaugh. Section twelve also contains the following:

"All parties who have not joined in the petition or assented thereto in writing and who appear by the petition or petition and abstract or report of the examiner of titles to be interested in the fee, all occupants named in the petition and the husband and wife of the applicant, if married, shall be personally served with a copy of the notice, attached to a copy of the petition, if they reside in the state and can, with reasonable diligence, be found and served therein."

We must bear in mind that, according to plaintiffs' complaint, and actually, defendant was in possession of part of the property that Mr. and Mrs. Swartzbaugh sought to have registered in their names in the Torrens Title proceeding at the time those proceedings were instituted. Therefore, defendant should have been served, as an occupant of the property, as required in section twelve of the Torrens Title Act.

The effect of the failure to serve one in possession of part of the registered property was considered in the case of *Follette* v. *Pacific L. & P. Corp.*, 189 Cal. 193 [208 Pac. 295, 23 A. L. R. 965], where the Supreme Court said:

"From these excerpts from the body of the said land title law it appears to be the clear intendment of the law that as to every occupant of lands with respect to which the establishment and registration of the title is sought there must be a personal service of notice which serves as the process by which such person shall be brought within the jurisdiction of the court in which the proceeding for the establishment and registration of the title to the premises is pending. Any other interpretation of these essential provisions of the act giving the court jurisdiction over the subject-matter and the parties interested in such proceedings would permit the petitioner by the mere omission of the name or names of those persons who were in the actual occupation of the premises in question from his petition, to avoid the express requirement of the law as to the personal service of the notice or process upon such person or persons. This would be to permit him to take advantage of his own wrong and to thus violate one of the most ancient and salutary axioms of our law."

The Supreme Court then proceeded to discuss substituted service by publication, which in some cases is held to satisfy

the constitutional requirement of due process of law, and thus concluded:

"This, however, is not such a case, since under the express terms of the land title law under review the only service of notice of the proceedings to establish title which could be made upon occupants of the property was personal service. The provisions of the act as to publication of notice can have application only to those who were not in the possession or occupancy of the premises, and hence those provisions are a false quantity in the consideration of the case at bar. The case stands as though the only provision in the law as to the giving of notice was that requiring personal service upon the class of claimants in which this defendant is; and that notice not having been given there was in that proceeding and as to this defendant no due process of law."

It follows here that, as defendant was in possession of part of the registered property, and as no notice or process in the Torrens Title action was personally served on him, the judgment in that action was not binding upon him and was subject to attack by him in this action.

The consideration of the sufficiency of the evidence to support the finding of agreed boundary lines between the properties of Mr. and Mrs. Swartzbaugh and defendant requires a brief summary of the evidence offered on that question.

All of section twenty-six, in which the respective properties are located, was at one time owned by the Stearns Rancho Company, the common source of title of the parties here. A portion of the holdings of the Stearns Rancho Company, which included the property in question here, was subdivided into sections in 1901 or 1902 by Captain C. T. Healy, a civil engineer employed by that company. At least his locations of the northeast corner, and probably the center point of this section, had been preserved and proof of these locations was made during the trial. As is not unusual in these old surveys this section did not contain six hundred forty acres of land. The amount of the shortage does not appear.

The first sale of any of the land in the northeast quarter of section twenty-six was made to J. A. Smith, who purchased the northwest quarter of the northeast quarter of that section on a conditional sales contract. The date of this contract does not appear. The deed to Smith was dated Janu-

ary 13, 1905. Captain Healy set stakes at the southeast and southwest corners of the Smith property, 1320 feet south of the north line of the section. Smith went into possession of and occupied all of this property. According to Colonel H. S. Finley, who again surveyed this property for the Stearns Rancho Company in 1901 or 1902, this left the north and south dimension of the southwest quarter of the northeast quarter of section twenty-six at about 1307 feet.

Smith also bought the north one-half of the southwest quarter of the northeast quarter of section twenty-six. This property was surveyed and its corners located by Colonel Finley. He gave it a north and south dimension of 653.5 feet and an east and west dimension of 1321.88 feet. The location of the corner stakes set by Colonel Finley at the northeast, the southeast and the southwest corners of this property were preserved and proved at the trial. It is probable that this property was deeded by the Stearns Rancho Company to Smith in 1905. Sargent purchased and went into possession of this property during the year 1914. The corner stakes set by Colonel Finley were then in place. He continued to occupy all of the property designated by those stakes and was in possession of it at the time of trial.

John J. and Lola Desirra Swartzbaugh acquired title to the south half of the southwest quarter, and the southeast quarter, of the northeast quarter of section twenty-six, on February 26, 1906. John J. Swartzbaugh conveyed his half interest in it to Ruth Baldus on November 24, 1934.

Mr. and Mrs. Swartzbaugh went into possession of their property in 1906. They recognized the corners of the Sargent (then Smith) property as set by Colonel Finley and did not dispute those lines or make any claim to any of that property until about the year 1933, when a survey of their property was made. They then asserted that the south line of the Sargent property encroached on their property slightly more than nine feet, and on its east line more than an average of fifteen feet.

The differences between the parties over their boundary line, which is the south line of the Sargent property, arises chiefly from the shortage in the acreage of the quarter section and the fact that Captain Healy in setting the southerly corners of the northwest quarter of the northeast quarter of section twenty-six gave Smith a full 1320 foot north and

south dimension, and Colonel Finley, in setting the stakes for what is now the Sargent property, attempted to divide the shortage equally between the north half (Sargent) and the south half (Swartzbaugh) of the southwest quarter of the northeast quarter of section twenty-six. Plaintiffs maintain that the shortage should be borne equally by the three ownerships, if they are not to be given the full acreage called for in their Torrens Title certificate.

The explanation of the controversy over the location of the east line of the Sargent property is found in the testimony of an engineer employed by plaintiffs to survey their property. He testified that the center point of the section has been moved more than forty feet from its original location fixed by the Captain Healy survey. This change, with the shortage in the section, explains his location of this boundary line.

It should be observed that the measurements of the three engineers who had surveyed defendant's property did not exactly agree even when the computations were made from a common starting point. However, these differences were slight and need not affect our conclusions.

It is established beyond question that the accepted lines of use of the properties, as conformed to by both Mr. and Mrs. Swartzbaugh and defendant for more than twenty years, were substantially those lines established by the Colonel Finley survey and which were found to be the agreed boundary lines by the trial court.

Defendant planted his property to orange trees in 1914 and 1915. He constructed an irrigation pipe line paralleling, and about two feet west, of the east line of his property as established by Colonel Finley. A number of his orange trees were planted on the strip on the east end of this property now claimed by plaintiffs. He planted the south row of his orange trees about twelve and one-half feet north of the south line of his property, as established by Colonel Finley. Plaintiffs' property was planted to walnut trees which were set back a convenient distance from those lines. The owners of both properties observed these lines as the lines of planting, cultivation, use and occupation.

John J. Swartzbaugh testified as follows:

"Q. What I mean is this, when you planted your grove, you also paid attention to these stakes that were set? A. Yes. Q. And you kept on your side of the stakes and Sargent

kept on his side of the stakes, isn't that correct? A. Yes. Q. And that was over twenty years ago, wasn't it? A. Something like twenty years. . . . Q. And in the last twenty years nobody ever raised any question about the boundaries until Mr. Bates came out, did they? You and Sargent never had any trouble about the boundary, did you? A. I never knew where the boundaries were. Those stakes was there. Q. And you ploughed up to that line between the stakes on one side and Sargent ploughed up to the line between the stakes on the other side? A. Yes. Q. You never had any trouble with him about the boundaries at all? A. No. Q. You never discussed the boundary between yours and Mr. Sargent's properties until Mr. Bates came out there, isn't that right? A. Oh, we talked about the boundary. When he set his trees out we talked about the boundary, that he couldn't find any face to the twenty acres. Q. What? A. He couldn't find any face to the twenty acres. Q. What do you mean by that? A. Straight line. Q. No straight line to the twenty acres? A. Yes. Q. And then he set his trees out so they would come on a line down between the stakes? A. He had a point row on the north and a point row on the east. Q. But he kept on his side of the stakes? A. Yes. Q. And you kept on your side of the stakes, isn't that right? A. Yes, sir. Q. And neither one of you kicked about the boundary of the other in the twenty years, did you? Approximately twenty years? A. No. Q. There was no dispute between you as to who owned the property? A. No. Q. You simply went up to the line, the east stake, and figured that was your line, isn't that right? A. Yes, sir. Q. And it wasn't until Bates came out and told you that your lines went further into the Sargent line that you raised any question, isn't that right? A. When I sold a piece there that man there got Bates to survey it and he said my piece was nine feet, eight or nine feet short. Q. That was the first time you knew it, wasn't it? A. Yes.''

Plaintiffs urge that the evidence we have outlined fails to support the finding of agreed boundary lines, because: (1) There was no dispute about their locations, and, (2) There was no express agreement that any line should be taken and accepted as the true boundary line.

The question of an agreed boundary line is discussed in *Roberts* v. *Brae,* 5 Cal. (2d) 356 [54 Pac. (2d) 698], where it is said:

"The authorities indicate that in order to establish an agreed boundary line it is necessary to show that there was an uncertainty or belief of uncertainty in the location of the line, that there was an agreement, express or implied, fixing the line, and that there was an actual designation of the line upon the ground and occupation in accordance therewith. (*Muchenberger* v. *City of Santa Monica*, 206 Cal. 635, 642 [275 Pac. 803] ; *Ross* v. *Burkhard Inv. Co.*, 90 Cal. App. 201, 208 [265 Pac. 982].) The case last cited declares that 'It is only when the owners of contiguous tracts of land are uncertain as to the real boundary which separates their respective properties, by mutual agreement, either express or implied, consent to accept a specified line as the true boundary, and thenceforth occupy and use their respective properties in accordance therewith for a considerable length of time that the contracting parties and their privies in title will be estopped from repudiating the agreed boundary.' . . .

"In *Clapp* v. *Churchill*, 164 Cal. 741, 745 [130 Pac. 1061, 1062], it is declared that 'the doctrine of an agreed boundary line and its binding effects upon the coterminous owners rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line . . . This does not mean that the inference of an agreement arising from acquiescence does not support the added inference that the inferred agreement was based on a questioned boundary. The primary inference is of a valid pre-existing agreement and to be valid that agreement must have been based on a doubtful boundary line'. This is recognized in *Board of Trustees* v. *Miller*, 54 Cal. App. 102, 105 [201 Pac. 952], page 106. . . .

"Here there is no substantial evidence tending to rebut or overcome the presumption of an agreement raised by long acquiescence and occupation. As indicated above, the defendant Scheiber has been in possession for thirty-eight years and the defendant Brae and her predecessors for thirty-five years. Plaintiff has been the owner of her property for over ten years prior to the commencement of this action and in occupancy for a longer period. From other evidence it is apparent that the buildings, the lines and the possessions of the parties have been the same for a long period during which period there apparently have been no title disputes and no admissions that the lines were not true ones. In addition to

long acquiescence and occupation, we have in the present case the existence of substantial and permanent improvements, owned by the defendants, upon the disputed pieces of land. Under the circumstances, we are satisfied that agreed boundary lines were established which entitled the defendants to their respective possessions.''

Under the rules thus laid down, the evidence supports the finding of agreed boundary lines. That there was an uncertainty as to the true boundary lines is established in the testimony of Mr. Swartzbaugh. The Finley stakes were in evidence and the owners recognized the lines established by those stakes as the true boundary lines between their properties. The pipe line was constructed and their trees were planted on the assumption that the lines established by those stakes were the true boundary lines. They cultivated their properties up to these lines. These conditions existed for about twenty years. From it the trial court was fully justified in drawing the inference of an agreement on those boundary lines as the actual boundaries of the properties. It follows that as the challenged finding is supported in the particular of an uncertainty as to the boundaries by the direct evidence of Mr. Swartzbaugh, and in the particular of the agreement on the boundary, by a reasonable inference drawn from the evidence by the trial court, that finding cannot be disturbed here. (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 Pac. 42, 26 A. L. R. 123] ; *Witherow* v. *United American Ins. Co.*, 101 Cal. App. 334 [281 Pac. 668].)

Plaintiffs have attempted to appeal from the order denying their motion for a new trial. Such an order is not appealable. (Sec. 963, Code Civ. Proc.) The attempted appeal from that order is dismissed.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.