[Civ. No. 8176. Third Dist. June 12, 1953.]

RAHLVES AND RAHLVES, INC. (a Corporation), Respondent, v. JOHN F. AMBORT et al., Appellants.

Royal E. Handlos for Appellants.

Chalmers, Cowing & Sans for Respondent.

SCHOTTKY, J.—This is an appeal by defendants from a judgment quieting plaintiff's title to certain real property "as delineated on and according to the map of Rahlves Addition filed of record" in the office of the county recorder of Yolo County.

Appellants urge several grounds for a reversal of the judgment but before discussing these we shall summarize briefly the factual situation as disclosed by the record.

Respondent and appellants are adjoining landowners, appellants' land being located to the north of the land of respondent. The parties acquired title, through predecessors, from a common grantor, appellants' deed having been recorded one minute prior to that of respondent, on December 1, 1882. The descriptions in the conveyances of appellants' title show a starting point 20 rods south of the northeast corner of the southeast quarter of section 31 in the particularly described township. The conveyances to respondent's property commence at a point 40 rods south of the same northeast corner of the southeast quarter of section 31. Appellants acquired title in 1938 and respondent acquired title in 1950. Following acquisition of its property in 1950, respondent caused a

subdivision map to be prepared and recorded as the "Rahlves Subdivision," and houses were then built on the lots and sold. It has been the contention of appellants throughout the litigation that the subdivision map does not conform to respondent's record title but rather shows on its face an overlap of about 2½ feet onto the southern portion of appellants' property because of the difference between the map and the description in respondent's record title.

Respondent brought the instant action to quiet title against appellants as to certain described real property "as delineated on and according to the map of Rahlves Addition filed of record." Appellants' answer was a general denial and an affirmative assertion of ownership as to the amount of overlap which they alleged the subdivision map reflects through its asserted inconsistency with the respondent's record title. The answer also contained as a special defense the allegation that the subdivision map had not been properly executed as required by sections 11589, 11590, of the Business and Professions Code, this latter portion of the answer having been stricken upon respondent's motion.

Following a trial before the court without a jury, the court found that respondent was the owner of the land "as delineated on and according to the map of Rahlves Addition filed of record"; that appellants owned the land as described in their chain of title; that respondent acquired title in 1950, which deed was recorded; that the subdivision map includes no portion of appellants' property. Judgment was entered in accordance with said findings, and appellants' motion for a new trial was denied.

Appellants' first contention is that the admitted facts and the findings that the plaintiff and the defendants acquired title according to exhibits A and B attached to the amended answer are conclusive and binding on the court, and any evidence offered and any findings made in contradiction to these admitted facts were error.

Appellants point out that the deeds by which respondent and appellants acquired their respective properties were attached to appellants' answer as exhibits and that, by respondent's failure to file an affidavit denying it, the genuineness and due execution of said deeds were admitted under section 448 of the Code of Civil Procedure, and that according to said deeds the description of appellants' land commences at a point 20 rods south of the northeast corner of the southeast quarter of section 31 in Township 10 North,

Range 2 East, M.D.B.&M., and the description of respondent's land begins at a point 40 rods south of said northeast corner of said southeast quarter. There is in the instant case no controversy as to the descriptions in the deeds or their due execution. The controversy arises over the true location of the starting point for the description of respondent's land and for the description of appellants' land. The question to be determined, and which was determined by the trial court, was: Where is the correct location of the northeast corner of the southeast quarter of section 31, Township 10 North, Range 2 East, M.D.B.&M.?

Asa Proctor, licensed land surveyor and civil engineer, who had been engaged in land surveying and civil engineering in Yolo County since 1908, and who was at one time County Surveyor of Yolo County, was the principal witness for respondent at the trial, and we shall give a brief summary of his testimony.

He testified that before making the survey for the respondent's subdivision he inspected the government notes relative to the government survey of section 31 and examined the deeds on record relating to respondent's property and surrounding properties; that West Street in Woodland, running in a general north-south direction, is the east-west dividing line between section 31 and section 32; that Pendegast Street intersects West Street, and constitutes a quarter dividing line for those sections; that the lands here in question are in the southeast quarter of section 31, and have West Street for their eastern boundary. Proctor started by taking the southern line of *occupancy* of the Rahlves tract. He then measured northward to the iron pin located in the intersection of West and Pendegast Streets, which pin had been used in a number of previous surveys of section 32, which adjoins section 31 on the east, but in Proctor's judgment this iron pin did not represent the true U. S. Government survey corner in the east line of section 31 because the distance from the monument at the southeast corner of section 31 to iron pin located in the intersection of West and Pendegast Streets is 2,636.45 feet, whereas the distance from the said iron pin to the northeast corner monument is 2,648.02 feet. He, therefore, determined the location of the occupied southeast corner of the Rahlves property boundary with the property of the owner (Deckman) on the south side of the Rahlves property. This he found to be 1,320.55 feet north of the southeast corner of section 31. The monument from which this measurement

was taken has been in place for a great many years and is a corner common to sections 31, 32, 5 and 6.

Section 31 has a surplus of 4.48 feet in it caused by errors in making the United States Government surveys with chains, inaccurate instruments, adverse conditions and the human element of error. Very few sections of land are true sections, especially one such as section 31, which is along a range line. They usually have a surplus or a deficiency in measurement. The distance to point No. 2, Plaintiff's Exhibit No. 1, a quarter of a quarter section, though it did not include exactly a quarter of said surplus, conformed closely.

Theoretically, a section of land is one mile square, although there are frequent variations, and therefore the east line of section 31 should be 5,280 feet long, each quarter of the section should have an east line of 2,640 feet long and each quarter of a quarter section should have an east line 1,320 feet long. Each side of respondent's property theoretically should be 660 feet long.

A survey line was then run along the occupied boundary on the south side of plaintiff's property from said point westerly to the center of the section where fences from the south, north and east intersected and they found the distance to be 1,320.75 feet or only .75 of a foot more than it should be, and the distance to the west line of the plaintiff's property was 659.56 feet or .44 of a foot less than it should be.

Proctor found a fence and trees along this south boundary of plaintiff's property. He found a fence running north and south at the west boundary of plaintiff's property and halfway between the southeast corner of plaintiff's property and the center of the section. The fences running north and south from the center of section 31 were old fences.

The distance from the occupied southeast corner of respondent's property to the iron pin at the intersection of West and Pendegast Streets was 1,315.90 feet and a reference point was established at half said distance or 657.95 feet north of plaintiff's southeast corner and was about a foot or more south of the occupied boundary between plaintiff and defendants.

There was no fence between the properties of plaintiff and defendants at the time Proctor made his survey. Plaintiff's land was an alfalfa field and defendants' a cultivated orchard. There was a levee along the occupied line that served as a bulkhead against the encroachment of irrigation waters from one tract to the other.

The west line of plaintiff's property was fenced to within a distance of the span of one post from the northwest corner of plaintiff's property. At the time of the survey the fence was not standing at the corner but the fence was composed of wire and barbed wire and the corner post was attached to the wire. Proctor and his survey crew straightened out the fence and stretched it north. They then excavated at a point immediately below the post that was attached to the wire of the fence and found the lower portion of the post that was attached to the fence. It was rotted off. They put in an iron pin at the center of the rotted post and found it to be 659.20 feet from the southeast corner of plaintiff's land.

In view of the fact that there was no visible marker at the northeast corner of plaintiff's land, Proctor set the point for the northeast corner well back on plaintiff's property a distance 1.25 feet south of the northwest corner of plaintiff's property as is shown by the fact that plaintiff's west boundary is 659.20 feet and the east boundary is only 657.95 feet.

Proctor testified further that subsequent to the filing of the action he compiled data and undertook an investigation to locate the United States government survey monument marking the northeast corner of the southeast quarter of section 31 and did find it.

Knowing that the east boundary of section 31 was 4.48 feet in excess of the 5,280 feet or the one mile that it should be, Proctor made a survey of the south, west and north boundaries of section 31.

After making the measurements of the boundaries of section 31 and comparing the same with the United States government survey notes of said section (Plaintiff's Exhibit No. 4) and observing that on the east line of section 31 the lines of occupancy proceeding from the northeast corner of section 31 southerly and from the southeast corner of section 31 northerly were very close to the proper division of the surplus of 4.48 feet over one mile, in the theoretical length of the east line of section 31, Proctor then made excavations midway between the northeast and southeast corners of section 31 in search of the United States government survey monument for the quarter section corner.

Proctor found at a depth of about 39 inches a charcoal deposit three inches square and completely black. The government survey notes stated charred section posts were placed at corners. He found loose earth above the charcoal deposit indicating the location of the rotted corner post monument.

This United States survey corner post monument is marked point No. 17 on the map of section 31, plaintiff's Exhibit No. 1.

The United States government survey monument for the northeast corner of the southeast quarter of section 31 was carefully measured by Proctor and Bernard H. Hendricks of the Yolo County surveyor's office and found to be 4.42 feet north of the monument at the intersection of Pendegast and West Streets and designated on said map, plaintiff's Exhibit No. 1, as point No. 6. A monument was placed there. This made the United States government survey corner monument 2,640.87 feet north of the monument at the intersection of Gibson Road and West Streets, point No. 1 on plaintiff's Exhibit No. 1, or only 0.87 feet in excess of the one-half mile.

Proctor checked the occupancies along the east line of section 31 and found that they come within 0.22 of a foot of conforming to the theoretical distance of 660 feet. He also checked the occupancies of properties in the north half of section 31 along its east boundary and found that they conformed to the location of the United States government survey monument as found by him. Proctor also checked distances on the line running north and south through the center of section 31 and found that the corner and occupancies checked and conformed to what they should be, using the United States government monument found by Proctor.

Proctor testified the map of Rahlves Subdivision (Plaintiff's Exhibit 3) conforms to the survey he made, using the United States government monument as found by him as the northeast corner of the southeast quarter of section 31. Over appellants' objection the said map was admitted in evidence by the court for the purpose of ''showing his [Proctor's] measurements and deductions but not for the purpose of showing the boundary line.'' He also testified that if the iron pin at the intersection of Pendegast and West Streets was the true point of beginning there would be a shortage between the northeast corner and the southeast corner of the quarter section of section 31 of the difference between 2,640 feet and 2,636.45 feet of 3.55 feet and move the southeast corner of section 31 approximately 2 feet south of where it should be and of where it is occupied. And if the United States government survey monument located by Proctor is used the north line of Rahlves Subdivision is more than 660 feet south of the northeast corner of the southeast quarter of section 31, and the north half of the section has a surplus of 3.6 feet and the

south half has a surplus of .84 feet. Proctor testified further that if the south line of the Rahlves Subdivision were moved 2 feet further south, as appellants argue that it should be, said line would run through the garage on the adjoining Dachtler property and would be south of Dachtler's north fence line. Proctor testified also that the chief witness for appellants, Glover, who surveyed the Casa Linda Park Subdivision and who surveyed appellants' property, used the iron pin at the intersection of West and Pendegast Streets as the northeast corner of the southeast quarter of section 31 and measured the theoretical distances, disregarding occupancies, and that numerous monuments established by Glover were from 2 to 4 or 5 feet south and west of fence corner, fence lines and occupied property lines.

Bernard Hendricks, Assistant Engineer in the Yolo County Surveyor's office, testified Proctor called him to look at a corner he had found at West and Pendegast Streets; that he saw a charred area approximately $3\frac{1}{2}$ inches square in the bottom of a hole there; that he helped Proctor measure the distance north from the iron pin to the charcoal and it was 4.24 feet north and .18 feet east; that they set an iron monument over the charcoal.

Glenn Moeller, a licensed civil engineer and former Yolo County surveyor, testified that he saw the charcoal in the hole at West and Pendegast Streets and that if "the charred stake were the corner, it would come more near to satisfying the theoretical method of relocating a lower corner in accordance with our manual instructions from the Government."

Vincent Owen, a farmer, testified he leased the property, now owned by plaintiff, during 1947, 1948 and part of 1949. That the northwest corner of said property was terminated by a post in the west fence line and there were no broken fence posts at this point. He planted the land to alfalfa. There was a levee along the north line of the property. The levee ran from a point south of said post in the fence at the northwest corner to a point just south of the tree at the northeast corner of the property at West Street. He irrigated his alfalfa twice and found the levee to be weak and let the water run over onto Ambort's property. Not caring to have any difficulty with Ambort over water, Owen ran his three gang plow along the north or Ambort's side of the levee driving it from west to east to plow the levee one turn to the south. In doing so he struck buried fence posts between

his second and third plow. These posts were located 24 or 26 inches north of the center of the crest of the levee.

Robert Anderson farmed what is now plaintiff's property in 1949 and 1950 after Owen. He testified there was a fence along the west boundary but at the north end of the fence a broken post and wire were lying on the ground; that there was a levee along the north side of the property.

William A. White, a civil engineer, testified that he worked for Proctor, making his survey of the Rahlves property. He testified that the alfalfa field extended north of the north line of the Rahlves property as surveyed in by Proctor; that when the line got beyond halfway between the northwest corner and the northeast corner of the Rahlves property, the north boundary line then went up on said dike and for the last few feet to the northeast corner was on the north slope of said dike; that they found the broken fence post and wire at the north end of the west boundary fence.

As hereinbefore set forth the court found that respondent was the owner of the land as delineated on and according to the map of Rahlves Addition filed of record and that the subdivision map included no portion of appellants' property. The map was introduced in evidence and was thoroughly explained by the civil engineer who made the survey and who prepared it. It was certainly admissible in evidence as showing what respondent claimed and what the boundaries were as testified to by respondent's witness Proctor and others. Appellants assert that the said finding of the court was in contradiction to the admitted facts, the deeds, and the map itself. Appellants argue that since respondent did not controvert the deeds appended to the answer, the descriptions therein amount to an admitted fact which cannot be controverted, either by the evidence or other parts of the pleading; that these deeds gave the point of beginning of each party's property as a certain distance south of a particularly described corner, and since the call in the deed established respondent's line as starting 660 feet south of that corner, the subdivision map showing it as starting 657.95 feet south of that corner is incorrect.

Respondent in reply points out that while the deeds refer to a common starting point, they do not reveal the location of that starting point, and state that while appellants claim that said point is the iron pin at the intersection of Pendegast and West Streets in Woodland, respondent claims that the true point is 4.24 feet north of that pin.

A case strikingly similar to the instant case is *Moniz* v. *Peterman,* 220 Cal. 429 [31 P.2d 353]. That case was an action to quiet title in which the dispute was as to the location of the dividing line between the properties of plaintiffs and defendant, and the chief issue was as to the location of the common corner section which was the initial starting point for the description used in the deed. In the case the court said at page 432:

"There is no merit in the appeal. The finding of the trial court with reference to the initial starting point is supported by the evidence. The question of the location of the common corner section which was the initial starting point for the description of plaintiffs' and defendant's deeds was gone into thoroughly by both sides."

The court then proceeded to summarize the testimony of the surveyors, and then continued at page 433:

". . . The map of the Hughes subdivision was also received in evidence. It cannot be said, as claimed by appellant, that a finding based upon the above testimony, locating the disputed point at 44 feet west of the center line of the railroad right of way, was 'contrary to all the evidence and wholly unsupported.'

"Appellant at the trial attempted to prove his contention by showing that there was an iron pipe in the ground located at the point claimed by him to be the common section corner, that is to say, 26.2 feet west of the center line of the railroad right of way. It is admitted that there was an iron pipe there, but there is no direct evidence establishing when the pipe was so located, or that it was a government location of the section corner. Appellant cites section 2077, subdivision 2, of the Code of Civil Procedure, which provides that, 'when permanent and visible or ascertainable boundaries or monuments are inconsistent with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount', as requiring that such monument be held to be the common section corner. It will be noted, however, that the original government field-notes were not available and appellant in his own brief states that, 'it stands as an admitted fact in the case that there was no established or known government corner common to the four sections.' The testimony of Thomas, the licensed surveyor, who made the survey upon which appellant bases his claim to the 18 feet of land and the well situated thereon, that in several maps or adjoining tracts of lands, the iron pipe had been accepted as

the section corner by the surveyors making the respective surveys, while persuasive, is not conclusive. As was said in *Golden* v. *City of Vallejo,* 41 Cal.App. 113 [182 P. 347], in answer to a similar argument that by virtue of code section 2077, subdivision 2 of the Code of Civil Procedure, the known monument must control, 'the application of the rule presupposes that the monument was placed by the government surveyors to mark the corner. But that was not established and the court in view of the evidence was justified in rejecting that theory.' Inasmuch as neither side could with certainty establish the disputed section corner, the decision of the trial court necessarily rested upon a weighing of probabilities. We have set forth generally the evidence offered by each side. It will serve no purpose for us to balance the facts adduced one against the other and weigh the testimony of the various witnesses upon this phase of the case. That was the province of the trial court. It has done so and decided in favor of the respondents. Under the familiar rule relative to a conflict in evidence, the conclusion of the trial court will not be disturbed on appeal.''

Applying the principles of *Moniz* v. *Peterman, supra,* to the instant case, we believe there is ample support in the record for the implied finding of the court that the true location of the northeast corner of the southeast quarter of section 31 was as located by Proctor, respondent's surveyor, a distance of 4.24 feet north of the iron pin at the intersection of Pendegast and West Streets. ▮▮▮▮ In view of the evidence, the court was fully justified in rejecting appellants' contention that the iron pin was the true corner, as there was no evidence that it had been placed by government surveyors to mark the corner, and the survey made by Proctor checked out, and conformed to the occupancies, theoretical distances, and apportionment of excess distances, to indicate strongly that the monument found by Proctor above the charcoal deposit, which one witness testified appeared to be charred stake or block of wood, was the true government location of said northeast corner of the southeast quarter. It was the province of the trial court to weigh the evidence, and where, as here, there is a conflict in the evidence, the conclusion of the trial court will not be disturbed on appeal.

Appellant next contends that ''the Court's conclusion as to occupancy establishing title was erroneous and the evidence thereon insufficient.''

Appellants then point out certain statements of the trial court in which the court stated its reluctance to disturb existing boundary lines and its belief that the evidence indicated that there was an implied agreement that the old fence fixed the boundary line between the properties of appellants and respondent.

The court found that respondent was the owner of the land as delineated on and according to the recorded map of Rahlves Addition and that the subdivision map included no portion of appellants' property. ▮ Respondent's action was one to quiet title, and the ultimate fact was the ownership of the property. (22 Cal.Jur., Quieting Title, § 54.) ▮ As stated in 24 California Jurisprudence, Trial, section 207: "And if the ultimate fact be found, it is not necessary expressly to find the probative facts, for the former includes a finding upon all probative facts necessary to sustain it."

▮ As we have hereinbefore stated, the evidence was sufficient to support the implied finding of the court that the true location of the northeast corner of the southeast quarter of section 31 was as located by Proctor and as indicated on the recorded map of Rahlves Addition. This finding would be sufficient to support the judgment even if the evidence were insufficient to also support an implied finding that there was an implied agreement that the old fence fixed the boundary line.

▮ When a trial is before the court without a jury statements of the trial judge during the course of the trial may not be used to impeach the finding ultimately signed by the court. For as stated in 24 California Jurisprudence, page 924, the well-settled rule is: "Opinions of trial judges, although welcomed by the appellate courts as aids to the justices in discovering the processes by which judgments have been reached, are not binding. Such an opinion is no part of the decision, and may be modified, or nullified by the findings of fact and conclusions of law. The opinion is merged in or controlled by the judgment; it constitutes no part of a record on appeal, and may not be used to impeach the findings."

However, we believe that the statements made by the trial court merely showed that the belief of the trial court that the true corner point was as testified to by Proctor was strengthened by the testimony as to the occupancies and the testimony as to the old fence. ▮ For as pointed out by the trial court, it is a well established rule of law that where adjoining landowners have acquiesced for considerable time,

at least equal to the period of time prescribed by the statute of limitations, in the location of a division line between the lands, although it may not be the true line according to the call in their deeds, it is evidence that the said division line is the true line. The law as to this point is clearly stated in the case of *Hannah* v. *Pogue*, 23 Cal.2d 849 [147 P.2d 572], in which case the defendant contended that there was no evidence fixing the boundary between the lands of the parties. The Supreme Court said, at page 856:

". . . It is the rule, however, that the court may infer that there was such an agreement ensuing from uncertainty or a dispute, from the long-standing acceptance of a fence as a boundary between the lands of two owners. (*Roberts* v. *Brae*, 5 Cal.2d 356 [54 P.2d 698] ; *Vowinckel* v. *N. Clark & Sons*, 217 Cal. 258 [18 P.2d 58] ; *Moniz* v. *Peterman*, 220 Cal. 429 [31 P.2d 353] ; *Board of Trustees* v. *Miller*, 54 Cal.App. 102 [201 P. 952] ; *Todd* v. *Wallace*, 25 Cal.App.2d 459 [77 P.2d 877] ; *Perich* v. *Maurer*, 29 Cal.App. 293 [155 P. 471] ; *Swartzbaugh* v. *Sargent*, 30 Cal.App.2d 467 [86 P.2d 895] ; *Southern Counties Gas Co.* v. *Eden*, 118 Cal.App. 582 [5 P.2d 654] ; *Raney* v. *Merritt*, 73 Cal.App. 244, 250 [238 P. 767] ; see *Park* v. *Powers*, 2 Cal.2d 590, 599 [42 P.2d 75] ; *Clapp* v. *Churchill*, 164 Cal. 741, 746 [130 P. 1061] ; see 14 Cal.L.Rev. 138.)

"Mrs. Hannah testified that the fence was in existence when her husband acquired the property, that it remained standing down to the time of the trial, and that she believed it marked the boundary until she learned that defendant Pogue had employed a surveyor to determine the boundary. This testimony establishes her acceptance of the fence as the boundary, in all likelihood reflecting the belief of her husband and former owners on the other side of the fence. She also testified that she knew of no agreement that the fence should constitute the boundary. This testimony does not necessarily rebut the inference that there was such an agreement, however, for the inference may be made that an agreement was inherent in the long-standing acceptance of the fence as the boundary. (*Roberts* v. *Brae, supra,* at 359; *Vowinckel* v. *N. Clark & Sons, supra,* at 260; *Moniz* v. *Peterson* [*Peterman*], *supra,* at 435; *Board of Trustees* v. *Miller, supra,* at 105; *Southern Counties Gas Co.* v. *Eden,* 118 Cal.App. 582, 586 [5 P.2d 654] ; see 14 Cal.L.Rev. 138.) The courts have recognized such boundaries because the early surveys in the

state were most uncertain, and in later years the monuments and landmarks they described could not be found. (See Loeb, *The Establishment of Boundary Lines by Practical Location,* 4 Cal.L.Rev. 179.) In the present case the boundary lines could not be ascertained from the early surveys, for the monument determining the northern end of the boundary and most of the other landmarks cannot be found. Given the difficulties of fixing the boundaries anew according to the old surveys, the trial court properly recognized a line that has served for many years as the practical boundary.

''The trial court decided that this boundary was settled by agreement in 1917, apparently because this year marked the acquisition of the property by the Hannahs and their acceptance of the fence as a boundary. It is unnecessary to decide whether on this evidence the agreement can be assigned to this particular date, for the precise date of agreement is immaterial in view of the acceptance of the fence as a boundary over a long period of years.''

Appellants argue that this case does not have the requisites for an agreed boundary line, or an uncertain line which was then agreed upon as an accepted boundary line because the descriptions in the deeds are specific, certain and accurate. They argue also that evidence of a 1-foot levee dividing the property at approximately the point set by Proctor, plus evidence of fencing up to or along that line merely show acquiescence for convenience where, as here, the boundary was not uncertain but capable of ready establishment.

Respondent in reply reviews the evidence as to occupancy and argues that there was an implied agreement as to the boundary line arising out of the conduct of the owners through many years. We believe that the evidence is sufficient to support an inference that there was such an agreement, but as hereinbefore stated the implied finding that the true location of the northeast corner of the southeast quarter of section 31 was as located by Proctor and as indicated on the record map of Rahlves Addition is sufficient to support the judgment.

■ Appellants contend also that the court erred in striking out that portion of appellants' amended answer setting up the defense that the subdivision map of Rahlves Addition was not properly executed in accordance with the requirements of the Business and Professions Code. We are unable to understand how this could constitute a defense to respondent's action to quiet title, and appellants have cited no authority

in support of this contention. There was no error in striking out this portion of the amended answer.

No other points raised require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied July 3, 1953, and appellants' petition for a hearing by the Supreme Court was denied August 6, 1953.